FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

3/22/18

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARREL KILLION,<br><br>               Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | No. 1:16-CV-03205-SMJ<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY JUDGMENT MOTION** |

Plaintiff Darrel Killion appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) benefits. He alleges the ALJ improperly found his symptom testimony not credible and discounted the opinions of several medical providers. The ALJ gave specific reasons, supported by substantial evidence, for rejecting Killion's symptom testimony and for her consideration of most medical opinions. However, because the ALJ improperly gave minimal weight to the opinions of treating physician Caryn Jackson and examining psychologist R.A. Cline, the ALJ's decision is reversed and remanded for further proceedings.

ORDER **-** 1

## I. BACKGROUND[1]

Darrel Killion filed an application for SSI on September 14, 2009, alleging disability beginning September 5, 2008. AR 359. His claim was denied initially and upon consideration. AR 46–85; 86–98. He subsequently amended his alleged onset date to September 14, 2009. AR 148. Following a hearing, an ALJ found Killion not disabled. AR 142–48. The appeals counsel vacated that decision and remanded for further proceedings. AR 155–58. On remand, another hearing was held before an ALJ on November 17, 2014, at which Killion and a vocational expert testified. AR 99–128. On March 11, 2015, the ALJ issued a decision finding that Killion was not disabled and denying his application for SSI benefits. AR 24–38. The Appeals Council denied Killion's request for review, AR 1–3, and he timely appealed to this Court. ECF No. 1.

## II. DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER - 2

sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### III. ALJ FINDINGS

At step one, the ALJ found that Killion had not engaged in substantial gainful activity since September 14, 2009. AR 27. At step two, the ALJ concluded that Killion had the following medically determinable severe impairments: gout

and adjustment disorder with anxiety. AR 27. The ALJ noted that Killion had engaged in substance use during the relevant period, had a childhood diagnosis of attention deficit-hyperactivity disorder, and had been treated for asthma and hypertension, but she found that none of these conditions were severe impairments. AR 27. The ALJ also noted that Killian had fractured vertebrae in his back and had a body mass index within the obese range, but that neither condition had existed for 12 continuous months and therefore could not be a severe impairment. AR 27.

At step three, the ALJ found that Killion did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 28. At step four, the ALJ found that Killion had the residual functional capacity to perform light work with some additional limitations. AR 29. In reaching this conclusion, the ALJ found that Killion's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but she found that some of Killion's statements concerning the intensity, persistence and limiting effects were not entirely credible. AR 30. In determining Killion's physical capacity, the ALJ gave significant weight to state agency medical consultant, Dr. Howerd Platter. AR 33. The ALJ gave minimal weight to the opinion of Killion's treating physician, Dr. Jackson. AR 33. In determining Killion's mental functionality, the ALJ gave significant weight to state agency

psychological consultant Dr. Kristine Harrison and gave some weight to consultative evaluator Dr. Toews's opinion. AR 33–34. The ALJ gave minimal weight to the opinions of counselor Russel Anderson, evaluators Jose Perez, Dick Moen, Dr. Jan Kouzes, and Dr. R.A. Cline, and reviewing psychologist Dr. Phyllis Sanchez. AR 35. The ALJ gave no weight to the review of two other reviewers who provided no functional limitation. AR 36.

At step five, the ALJ found that Killion did not have relevant past work and that given his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he could perform. AR 36–37.

## IV. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one

rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## V.     ANALYSIS

Killion argues that the ALJ erred in determining his residual functional capacity at step four by (1) finding his testimony not credible, and (2) improperly discounting the opinions of several medical providers. ECF No. 13. The ALJ did not err in finding Killion's symptom testimony not credible; however, the ALJ improperly discounted the opinions of a treating and an examining medical provider. Accordingly, the ALJ's decision must be reversed.

**A.     The ALJ did not err in finding Killion's symptom testimony not credible.**

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of her symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior

inconsistent statements, unexplained failures to seek treatment, and the claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.*

Killion alleged that gout attacks made it difficult for him to "keep up with others" and to sustain a job. AR 29. He asserted that gout in his foot, knee, and right hip sometimes prevented him from getting out of bed, and that even with prescribed pain medications, he could only be on his feet for a couple hours before he had to rest. AR 30. He alleged that since 2009, these attacks happened at least a couple times per week. AR 30. Killion also alleged mental health symptoms, including feeling panicked when around a lot of adults or authority figures, and difficulty sleeping. AR 30. Killion alleged that he spent a lot of time resting, spent much of his day on the computer, and did not engage in many activities with friends because he did not leave the house much. AR 30. He was able to do some household chores, sometimes walked the dog, and had begun exercising and changing his diet. AR 30. Because the ALJ found that Killion's medically determinable impairments could reasonably be expected to cause the alleged symptoms, AR 30, the ALJ could reject Killion's testimony only for specific, clear, and convincing reasons. *See Burrell*, 775 F.3d at 1137.

The ALJ stated several reasons for rejecting Killion's testimony. First, the ALJ found that while Killion "alleges significant symptoms and dysfunction from

gout[,] . . . the diagnosis is not entirely clear." AR 30. The ALJ noted that the record indicated that gout attacks were not nearly as frequent as alleged, with definitive notes of gout attacks in only January 2010 and June 2011, and that laboratory tests of uric acid levels showed only mild elevation outside the normal range. AR 30. Killion argues that the ALJ erred by rejecting his symptom testimony on the basis that his gout diagnosis was not entirely clear because the ALJ had already concluded at step two that gout was a severe, medically determinable impairment. ECF No. 13 at 19. But it is clear from the ALJ's analysis that she is not questioning whether Killion had in fact been diagnosed with gout, or even suggesting that it was not a severe impairment. Instead, the ALJ questions the severity of Killion's symptoms and the extent of his dysfunction because the record did not contain evidence of attacks occurring as frequently as Killion reported. This finding is supported by substantial evidence.

Second, the ALJ found that Killion's medication management and insistence on use of narcotic medications for treatment despite a history of narcotic dependence and misuse raises credibility issues. AR 30–31. Specifically, the ALJ found that Killion failed to pursue recommended treatment, was not compliant with his pain contract, and made unsupported assertions of allergies and side effects to all medications other than opioids and benzodiazepines. AR 31.

Killion does not directly challenge these findings, which are supported by substantial evidence.

Third, the ALJ found that Killion's lack of candor about his use of marijuana and spice undermined his credibility. AR 31. Killion does not directly challenge this finding, which is a supported by the record and a proper basis to question a claimant's credibility. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[C]onflicting or inconsistent testimony concerning alcohol use can contribute to an adverse credibility finding."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming adverse credibility finding based upon inconsistent statements to doctors about alcohol and drug use).

Fourth, the ALJ noted possible lack of compliance with a recommended gout diet and inconsistency between Killion's reported activities and the severity of his symptoms. AR 31. This speculation about possible noncompliance is improper and the ALJ's inconsistency finding is unsupported. The ALJ found that "there was no mention at the hearing of the claimant's efforts to avoid exacerbating foods outside of the avoidance of alcohol." AR 31. This is not an adequate basis to draw any conclusion about Killion's efforts to manage his diet. With respect to inconsistency, the ALJ found that "the claimant testified that there were days he could not get out of bed, yet, he reported to his mental health provider that he walked most everywhere he went and helped his friends with

chores." AR 31. By the ALJ's own description of the facts, there is no inconsistency here. Killion reported that his symptoms were intermittent.

Finally, the ALJ found that Killion's alleged mental health symptoms are inconsistent with the record and his lack of commitment to formal mental health treatment. AR 31–32. Killion argues that lack of commitment to formal mental health treatment is not a proper basis to reject a claimant's symptom testimony. ECF No. 13 at 20. While it may be improper to rely on failure to seek out mental health treatment as a basis to reject a claimant's credibility, *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" (quoting *Nyguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)), the ALJ's findings here are more specific. The ALJ notes that Killion repeatedly failed to follow through with recommended mental health treatment and failed to present for referrals. AR 31–32 The ALJ also notes that Killion's medication management was inconsistent. AR 32. These findings are supported by the record.

Although the ALJ erred in finding that Killion was not compliant with a gout diet and that he made inconsistent statements about his symptoms, the other

reasons the ALJ relied on for rejecting his credibility are sufficient to support the adverse credibility determination. Harmless error analysis applies to Social Security disability cases. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (citing *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011)); *Molina*, 674 F.3d at 1115. "The nature of that application is fact-intensive—'no presumptions operate' and '[the reviewing court] must analyze harmlessness in light of the circumstances of the case.'" *Id.* (quoting *Molina*, 674 F.3d at 1121). Accordingly, the Court must consider whether the ALJ's error was "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). In the context of credibility, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1155. In this case, the ALJ's finding concerning (1) the severity and frequency symptoms of Killion's symptoms; (2) Killion's medication management and insistence on use of narcotic medications for treatment despite a history of narcotic dependence and misuse; (3) Killion's lack of candor about his use of marijuana and spice; and (4) Killion's mental health symptoms and failure to follow through with treatment are supported by substantial evidence and

ORDER **-** 12

adequately support the ALJ's adverse credibility determination without the findings concerning diet and inconsistent statements. The ALJ's errors in evaluating Killion's credibility are harmless.

**B.     The ALJ erred in giving minimal weight to a treating and an evaluating medical provider.**

Killion argues that the ALJ failed to adequately consider the opinions of several treating or examining medical providers Caryn Jackson, MD.; R.A. Cline, Psy.D.; Jose Perez, M.Ed.; Russel Anderson, MSW; Dick Moen, MSW; and Jan Kouzes, Ed.D. ECF No. 13 at 7–16. The opinion of an examining physician is generally entitled to greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ cannot reject a treating or examining physician's opinion, even if it is contradicted by another physician, without setting forth specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ improperly rejected the opinions of Drs. Jackson and Cline, but adequately supported her determination to give minimal weight to the other medical providers at issue here. Because the ALJ erred by rejecting the opinions of Drs. Jackson and Cline, the ALJ's decision must be reversed.

**1.     The ALJ improperly rejected the opinion of Dr. Caryn Jackson**

Killion argues that the ALJ improperly rejected the opinion of his treating physician Dr. Caryn Jackson. ECF No. 13 at 15–16. Dr. Jackson examined Killion

ORDER **-** 13

in November 2012. She found that gout markedly limited his ability to walk, stoop, and crouch, and opined that he was limited to sedentary work. AR 869–70. The ALJ found Dr. Jackson's opinion "unpersuasive" and gave it "minimal weight." AR 33. The ALJ based this conclusion on findings that (1) Killion did not follow Dr. Jackson's recommendation to see a rheumatologist for more definitive diagnosis and treatment options other than pain control, and instead continued to pursue narcotic pain medication; and (2) Dr. Jackson did not relate her opinion to her exam findings and offered no specific explanation for her diagnosis AR 33.

The ALJ's first basis for rejecting Dr. Jackson's opinion is improper. While Killion's failure to follow up with a referral may be a basis to question his credibility or the severity of his symptoms, it is not a basis to question the opinion of the provider who made the referral. The ALJ's second basis for rejecting Dr. Jackson's opinion is not supported by substantial evidence. In addition to relying on Killion's subjective complaints, Dr. Jackson's treatment notes demonstrate elevated uric acid, tenderness of certain joints, and limited range of motion, consistent with her diagnosis. AR 768–874, 886.

**2.      The ALJ improperly rejected the opinion of Dr. R.A. Cline.**

Killion argues that the ALJ erred by rejected the opinion of examining psychologist R.A. Cline. ECF No. 13 at 7. Dr. Cline evaluated Killion in October

2014. AR 979. She found that he had marked anxiety/panic symptoms and moderate sleep disturbance and social discomfort, and concluded that his symptoms would markedly limit his ability to complete a normal work day and work week and to maintain appropriate behavior in a work setting. AR 980–82. The ALJ gave Cline's opinion minimal weight, on the basis that Killion was not honest with Dr. Cline about his substance use; Dr. Cline did not explain the basis for her marked limitation conclusions; Dr. Cline's conclusions are inconsistent with her findings that memory and concentration were within normal limits; and Dr. Cline did not treat Killion. AR 35. Killion argues that the ALJ improperly relied on Killion's misrepresentation of substance abuse history, incorrectly found that Dr. Cline failed to explain the basis for the marked limitations, improperly found that Dr. Cline's opinion was internally inconsistent, and erroneously discounted the opinion based on the fact that Dr. Cline did not treat Killion. ECF No. 13 at 7–12.

Dr. Cline's opinion is thorough and her marked limitation finding is clearly supported. Notably, she found that Killion had marked anxiety/panic attack symptoms that caused him to feel anxious most of the time and to avoid leaving home. AR 980. She also noted numerous other symptoms that would contribute to inability to complete a normal workday and maintain appropriate behavior in a work setting. AR 980–83. The fact that Killion was not honest about substance

use after age 14 is not a basis by itself to reject Dr. Cline's opinion, particularly because the record demonstrates that Killion was not using substances other than prescribed medications at the time of Dr. Cline's exam. The fact that Dr. Cline was not a treating provider is also not a basis to reject her opinion, it is merely a basis give the opinion less weight than that of a treating provider. *See Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) ("Generally, the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician."). Accordingly, the ALJ erred by giving Dr. Cline's opinion minimal weight.

**2. The ALJ properly discounted the opinions of other psychological evaluators.**

Killion argues that the ALJ improperly rejected the opinions of Jose Perez, Russel Anderson, Dick Moen, and Dr. Jan Kouzes. ECF No. 13 at 12–13. Mr. Perez evaluated Killion in December 2009. AR 628. He noted anxiety and depression symptoms and found marked limitations in ability to relate appropriately to co-workers and supervisors, ability to interact appropriately in public, and ability to respond appropriately and tolerate the pressures and expectations of a normal work setting. AR 627–28. Mr. Anderson evaluated Killion in September 2010. AR 536. He found that Killion "suffers from ADHD, Anxiety, and Depression, which is compounded by chronic pain from untreated

ORDER **-** 16

gout. He has difficultly focusing and staying on task[,] suffers from agoraphobia and has difficulty with social and occupational interaction." AR 534. Mr. Anderson noted marked limitations in ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention, ability to work with others, ability to complete a normal workday and workweek without interruptions from psychological symptoms, the ability to accept and respond appropriately to instructions, and the ability to respond appropriately to changes in the work setting. AR 534–35. Mr. Moen evaluated Killion in May 2011. AR 850. He noted marked depression, and moderate AD/HD and panic disorders, and found marked limitations in ability to understand, remember and persist in tasks, and ability to perform routine tasks without undue supervision. AR 847–48. Dr. Kouzes evaluated Killion in October 2012. AR 862. She found symptoms of depression and anxiety, and she noted marked limitations in ability to complete a normal work day and work week without interruptions from psychological symptoms and the ability to maintain appropriate behavior in a work setting. AR 863–64.

      The ALJ gave each of these providers' opinions minimal weight, on the basis that the evaluations were conducted solely for the basis of establishing eligibility for state benefits, and the providers provided little to no explanation for the marked limitation findings and included limited accompanying treatment

notes. AR 34–35. Killion does not provide detailed reasons why the ALJ erred with respect to each of these opinions, but argues that the ALJ improperly rejected these opinions despite their consistency. ECF No. 13 at 13–14.

The ALJ's findings that these providers failed to adequately correlate exam findings to the indicated limitations is supported by substantial evidence, and is a legitimate reason to assign less weight to these opinions. Accordingly, the ALJ did not err by giving minimal weight to the opinions of Jose Perez, Russel Anderson, Dick Moen, and Dr. Jan Kouzes.

**C.     Remand**

Killion argues that this case should be remanded for immediate payment of benefits. ECF No. 13 at 1, 12. Remand for payment of benefits is appropriate only if: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison*, 759 F.3d at 1020). Although the ALJ erred by rejecting the opinions of Drs. Jackson and Cline, it is not clear from the record that, crediting these opinions as true, the ALJ

will be required to award benefits. Accordingly, remand for immediate payment of benefits is not appropriate in this case.

## VI.   CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.**  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

**2.**  The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

**3.**  This matter is **REMANDED** to the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**4.**  **JUDGMENT** is to be entered in the Plaintiff's favor.

**5.**  The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 22nd day of March 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge